UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAUSTEVEION JOHNSON,<br><br>       Plaintiff,<br> v.<br><br>JO GENTRY, *et al.*,<br><br>       Defendants. | Case No. 2:19-cv-00232-MMD-NJK<br><br>ORDER |

**I. SUMMARY**

*Pro se* Plaintiff Lausteveion Johnson brings this civil rights action under 42 U.S.C. § 1983. Before the Court are Defendants'[1] motion for summary judgment ("Defendants' Motion" (ECF No. 32)) and Plaintiff's cross-motion for summary judgment ("Plaintiff's Cross-Motion" (ECF No. 37)).[2] For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion and denies Plaintiff's Cross-Motion.[3]

**II. BACKGROUND[4]**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 7 at 1.) Plaintiff was incarcerated at the High Desert State Prison ("HDSP") and the Southern Desert Correctional Center ("SDCC") during the time relevant

---

  [1]Defendants are James Dzurenda, Brian Williams, James Cox, and Michaela Garufalo.

  [2]The Court has reviewed the parties' respective responses (ECF Nos. 36, 41) and replies (ECF Nos. 39, 43).

  [3]Defendants raise compelling reasons justifying the filing under seal of Exhibit C to their Motion. (ECF No. 33.) The Court therefore grants Defendants' unopposed motion for leave to file exhibit under seal. (*Id.*)

  [4]The facts recited are undisputed unless otherwise noted.

to this action. (*Id.*)

Plaintiff transferred to SDCC from HDSP on August 25, 2015. (ECF No. 32-1 at 3.) Plaintiff claims that there were several issues with the conditions at SDCC, including his assignment to a top bunk, asbestos and black mold, double celling, being locked in a hallway with a lack of visual supervision, a lack of emergency medical buttons, a lack of cleaning supplies, inadequate ventilation, cats living in the vents, a lack of hot water, and an inadequate fire safety system. (ECF No. 7 at 3-5.) Plaintiff also states that while at SDCC he was denied mental health treatment for post-traumatic stress disorder ("PTSD") and dental treatment for a tooth that was causing him pain. (*Id.* at 5-6.)

Following screening of Plaintiff's First Amended Complaint ("FAC") under 28 U.S.C. § 1915A(a), the Court permitted Plaintiff to proceed on three counts: (1) Eighth Amendment conditions of confinement against Williams, Cox, and Dzurenda; (2) Eighth Amendment deliberate indifference to serious medical needs for denial of Plaintiff's mental health treatment against Williams, Cox, Dzurenda, and Garufalo; and (3) Eighth Amendment deliberate indifference to serious medical needs for denial of Plaintiff's dental treatment against Williams, Dzurenda, Cox, and Doe Dentists. (ECF No. 6 at 22-23; ECF No. 13 at 9-10.)

### III.     LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary

judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV.   DISCUSSION**

The parties rely on arguments in their respective motions to seek summary

judgment and to oppose summary judgment.[5] The Court will therefore address the parties' arguments raised in their separate motions collectively.[6]

### A.     Conditions of Confinement

Defendants argue that Plaintiff's conditions of confinement claim is barred by the applicable statute of limitations. (ECF No. 32 at 3, 4-5.) Defendants also assert qualified immunity as to Plaintiff's allegations involving bunk beds, asbestos exposure, and overcrowding based on a combination of double celling, hallway conditions, and lack of emergency call buttons. (*Id.* at 5-7.)[7]

#### 1.     Statute of Limitations

Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and therefore section 1983 actions, is two

---

[5]Plaintiff broadly contends that he is entitled to summary judgment on all of his claims because Defendants' Motion does not include a statement of undisputed facts and fails to disprove allegations in the FAC. (ECF No. 37 at 12.) But Defendants' Motion does not discharge Plaintiff of his own burden of production. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970) ("[T]he party moving for summary judgment has the burden to show that he is entitled to judgment . . . and if he does not discharge that burden then he is not entitled to judgment.").

[6]Both Defendants' Motion and Plaintiff's Cross-Motion contain defects that warrant denial of both motions. Defendants' Motion (ECF No. 32) violates LR 56-1 because it does not contain a statement of undisputed material facts. *See* LR 56-1 (providing in pertinent part that motions for summary judgment must include "a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in dispute, citing the particular portions of any pleadings, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies"). Plaintiff's response (ECF No. 36) and Cross-Motion (ECF No. 37) violate LR IC 2-2(b) because they are the same document containing both a response and a motion that seeks a separate form of relief. *See* LR IC 2-2(b) (requiring that a separate document be filed, and a separate event be selected for each type of relief requested). The Court nevertheless considers both motions in the interest of judicial efficiency in lieu of striking them and requiring the parties to re-file their briefs.

[7]Defendants also argue that Plaintiff does not have standing to challenge the various conditions at SDCC because he filed the FAC while housed at HDSP. (ECF No. 32 at 3-4.) This argument fails as the Court takes judicial notice of the fact that Plaintiff has subsequently returned to SDCC. *See* 2:16-cv-01889-GMN-DJA (ECF No. 180); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

years. NRS § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). A statute of limitations under section 1983 begins to run when the cause of action accrues, i.e., "when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998)).

Defendants argue that Plaintiff's conditions of confinement claim is time-barred because Plaintiff has been aware of the alleged conditions at SDCC since November 2014. (ECF No. 32 at 5.) Defendants point to Plaintiff's November 2015 complaint filed in a Nevada state court action ("State Court Complaint") wherein Plaintiff alleges almost all of the same conditions Plaintiff challenges in this action. (*Id*; ECF No. 32-2 at 9-12, 16-18.) Defendants insist that because in the State Court Complaint Plaintiff relied on alleged violations that began on November 19, 2014, Plaintiff had until November 19, 2016, to file this action. (ECF No. 32 at 5; ECF No. 32-2 at 2.) However, evidence provided by Defendants indicates that Plaintiff was not transferred to SDCC until August 25, 2015. (ECF No. 32-1 at 3.) Moreover, the State Court Complaint contains allegations of constitutional violations that were not included in the FAC—Plaintiff states these violations occurred at SDCC and HDSP between November 19, 2014, and November 1, 2015, but does not identify when each violation occurred at either prison. (*Compare* ECF No. 32-2 *with* ECF No. 7.) Viewing these facts in the light most favorable to Plaintiff as the non-moving party, a reasonable finder of fact could determine that Plaintiff was not aware of the conditions at SDCC until he transferred there in August 2015. Accordingly, a genuine issue of material fact exists as to when the statute of limitations began to accrue.

### 2. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court conducts a two-step inquiry to determine whether an officer is entitled to qualified immunity. *See, e.g.*, *Groves v. City of Reno*, No.

5

3:13-cv-00537-MMD-WGC, 2015 WL 5350099, *4 (D. Nev. Sept. 14, 2015). The two-prong inquiry is "(1) [W]hether the facts shown make out a violation of a constitutional right; and (2) if so, whether the constitutional right was clearly established as of the date of the alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants assert qualified immunity on Plaintiff's claim that he suffered constant pain from being assigned to the top bunk, arguing that Plaintiff did not have a constitutional right to, or a valid prescription for, a lower bunk. (ECF No. 32 at 7.) However, it has long been clearly established that a defendant who "purposefully ignore[s] or fail[s] to respond to a prisoner's pain" may violate the Eighth Amendment. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In the FAC—which is verified—Plaintiff alleges that the lack of ladders caused him to suffer extreme pain on a daily basis because he has "atrophy and arthritis in his left knee and in his back" and was forced to jump "up and off" of the top bunk. (ECF No. 7 at 3-4, 7); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence."). Plaintiff also asserts that he told each Defendant of this issue, but they refused to correct it. (ECF No. 7 at 3.)[8] Viewing these facts in the light most favorable to Plaintiff, a reasonable finder of fact could determine that Defendants' failure to respond to Plaintiff's

---

[8]Defendants urge the Court to adopt the approach of courts in other circuits who find that simply informing a prison official of an issue or denying an inmate's grievance is insufficient to demonstrate that official's participation in a violation of an inmate's constitutional rights. (ECF No. 32 at 8.) However, the Ninth Circuit holds that a prison official's awareness of a violation and failure to act to prevent further harm can establish personal participation. *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (declining to uphold summary judgment after concluding that a NDOC medical director who had only denied a second-level grievance personally contributed to the decision to refuse the plaintiff medically necessary surgery); *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (denying summary judgment to a warden and associate warden because in addition to reviewing a "no-kneel" order, they were aware of grievances regarding inappropriate medical treatment and the denial of recommended hip surgery "and failed to act to prevent further harm" to the plaintiff).

6

needs involving his bunk bed violated his Eighth Amendment rights.

Defendants also argue that they are entitled to qualified immunity on Plaintiff's claim involving the combination of double celling, the alleged lack of supervision, and the lack of emergency buttons because there is no case law that clearly establishes each of these as constitutional violations. (ECF No. 32 at 7.) But it is clearly established law that overcrowding can violate the Eighth Amendment when "combined with other factors such as violence or inadequate staffing . . .." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 471 (9th Cir. 1989).

Plaintiff has provided evidence that overcrowding and other factors have created unsafe conditions at SDCC. In the FAC, Plaintiff asserts that double celling and forcing prisoners to congregate in small, narrow hallways has created a hostile environment that leads to fights. (ECF No. 7 at 4.) Plaintiff also contends that there is a lack of supervision because there are only two officers to supervise 212 inmates and no emergency call buttons. (*Id.*) According to Plaintiff, this causes inmates to feel that "prison justice" is condoned at SDCC and as a result most assaults and other acts of violence go unreported. (*Id.* at 8.) Plaintiff states that he informed Defendants of these conditions starting on or around September 20, 2015, but they refused to correct the issues. (*Id.* at 3.) Plaintiff also provides a grievance directed to Dzurenda that describes these conditions and an affidavit stating that he informed Williams of these conditions "around December of 2015 and January of 2016." (ECF No. 37-2 at 28, 31.) Viewing these facts in the light most favorable to Plaintiff, a reasonable fact-finder could determine that Defendants were deliberately indifferent to unsafe conditions at SDCC. In light of this factual dispute, the Court cannot find as a matter of law that Defendants' alleged violating conduct was, or was not, inconsistent with clearly established law. *See Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotation marks omitted) (finding that "where historical facts material to the qualified immunity determination are in dispute . . . the district court [should] submit the issue to a jury").

However, Defendants are entitled to qualified immunity on Plaintiff's exposure to

7

asbestos claim. To prevail on a claim of deliberate indifference based on exposure to asbestos, Plaintiff must provide evidence that "he himself [wa]s being exposed to unreasonably high levels of asbestos . . .." *Terry v. Earley*, 704 F. App'x. 684, 685 (9th Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993)). Here, while Plaintiff has provided an affidavit stating that he "was exposed to asbestos and mold at SDCC from August of 2015—June of 2017," he does not provide any details on how he came into contact with asbestos, how frequently he was exposed, or the level of exposure. (*See* ECF No. 37-2 at 31.) Even viewing the evidence and drawing all inferences in the light most favorable to Plaintiff as the nonmoving party, Plaintiff's vague assertion that he was exposed to asbestos is not sufficient to establish a constitutional violation under the first prong of the qualified immunity inquiry.[9] Accordingly, the Court grants summary judgment for Defendants on this claim.

In sum, the Court denies summary judgment on Plaintiff's Eighth Amendment claims involving his bunk bed and the combination of double celling, hallway conditions, and lack of supervision and emergency buttons at SDCC. However, the Court grants summary judgment for Defendants on Plaintiff's conditions of confinement claim involving exposure to asbestos.

**B.    Deliberate Indifference to Serious Medical Needs**

Defendants assert qualified immunity on Plaintiff's claim that they were deliberately indifferent to his mental health needs, contending that Plaintiff cannot establish that Defendants violated his constitutional rights by depriving him of treatment for PTSD. (ECF No. 32 at 9-10; ECF No. 39 at 6.) Plaintiff counters that he is entitled to summary judgment because there is no dispute that Defendants were aware of his PTSD diagnosis since 2012, and since 2015 refused to ensure that he received one-on-one counselling. (ECF

---

[9]Because this is dispositive of the issue, the Court does not reach the second prong of the qualified immunity inquiry.

No. 37 at 9; ECF No. 43 at 4.)[10] The Court agrees with Defendants that Plaintiff has not established a constitutional violation under the first prong of the qualified immunity inquiry and therefore does not reach the second prong.[11]

Plaintiff offered a medical progress note from April 2012 and a declaration from Dr. Michael Koehn from July 2014 to support his PTSD diagnosis. (ECF No. 37-1 at 45, 49.) However, Defendants have provided evidence that on November 25, 2014, Plaintiff told medical staff that he had "no need for further counseling," and that Plaintiff was reclassified to "no mental health restrictions" the next day. (ECF No. 34-1 at 2.) Thus, the evidence is undisputed that since November 25, 2014, Plaintiff had no need for mental health treatment generally and did not later receive another prescription for one-on-one counseling specifically. The absence of evidence to establish that he had a serious medical need for continued one-on-one counseling treatment entitles Defendants to qualified immunity on this claim.

Regarding Plaintiff's claim of deliberate indifference to his dental needs, Defendants argue that Plaintiff fails to establish personal participation by Defendants because there is no evidence demonstrating that he ever informed any Defendant of his dental needs. (ECF No. 32 at 10.)[12] However, Plaintiff has provided sufficient evidence to create a material issue of fact as to Defendants' awareness of his needs for dental treatment. In particular, the FAC alleges that Plaintiff informed Williams, Cox, and Dzurenda of a hole in his tooth, the pain it was causing him, and his need for treatment

---

[10]While Plaintiff broadly asserts that he was entitled to summary judgment on all of his claims—discussed *supra* n.5—he also separately requests summary judgment on this particular claim. (ECF No. 37 at 9.)

[11]Because this is dispositive of the issue, the Court declines to address Defendants' remaining argument that Plaintiff failed to establish personal participation by each Defendant. (ECF No. 32 at 9-10.)

[12]Because Defendants assert qualified immunity on Plaintiff's deliberate indifference to dental needs for the first time in their reply (ECF No. 39 at 7), the Court does not consider it. *See Greenhow v. Sec'y of Health & Human Serv.*, 863 F.2d 633, 638-39 (9th Cir. 1988), *overruled on other grounds*, *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992).

but they "never put him on any list to be treated" from 2015 to 2018. (ECF No. 7 at 6.) Plaintiff submitted grievances addressed to Williams and Dzurenda, claiming he was in constant pain and requesting treatment for his tooth. (ECF No. 37-2 at 22-26.) Plaintiff has also provided an affidavit stating that in January 2016 he informed Williams of his "excruciating tooth pain" and asked him to "order medical to treat his decaying tooth . . .." (ECF No. 37-2 at 31 (internal quotation marks omitted).) A rational trier of fact could find that Williams, Cox, and Dzurenda were aware of Plaintiff's need for dental care, but failed to ensure that he was treated for his pain. Accordingly, the Court denies summary judgment for Defendants on Plaintiff's claim that Williams, Cox, and Dzurenda were deliberately indifferent to his serious dental needs.[13]

However, the Court grants summary judgment for Defendants on Plaintiff's claims against the Doe Dentists because Plaintiff failed to substitute their names before discovery closed on August 15, 2019. (*See* ECF No. 21 at 2); *see also Garcia ex rel. Estate of Acosta-Garcia*, 428 F. App'x. 706, 708-09 (9th Cir. 2011) (finding summary judgment for defendants appropriate where plaintiff had "ample opportunity . . . to conduct reasonable discovery, identify these defendants, and seek leave to amend the complaint to name them properly").

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 32) is granted in part and denied in part. It is granted as to Plaintiff's Eighth Amendment

---

[13]Defendants also contend that Williams, Cox, and Dzurenda did not personally participate in any violation of Plaintiff's right to dental treatment because they are not dentists and thus cannot treat his dental issue. (ECF No. 32 at 10.) But it is "clearly established . . . that a prison official who delays the receipt of necessary dental treatment has violated the inmate's constitutional rights." *Woods v. Carey*, 488 F. App'x. 194, 197 (9th Cir. 2012).

10

conditions of confinement claim based on exposure to asbestos, Plaintiff's Eighth Amendment deliberate indifference to serious medical needs based on Plaintiff's mental health needs, and Plaintiff's deliberate indifference to serious medical needs based on Plaintiff's dental needs as to Doe Dentists. The motion is denied as to all remaining claims and Defendants.

    It is further ordered that Plaintiff's cross-motion for summary judgment (ECF No. 37) is denied.

    It is further ordered that Defendants' unopposed motion for leave to file exhibit under seal (ECF No. 33) is granted.

    DATED THIS 14th day of September 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE